UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60878-CIV-MARRA

JAMES KISSINGER AND MARIE CULBERT,

Plaintiffs,

vs.

WELLS FARGO BANK, N.A., as Trustee for
Soundview Home Loan Trust 2007-Opt2,
Asset Backed Certificates, Series 2007-Opt2,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Wells Fargo Bank, N.A.'s ("Defendant") Motion for Summary Judgment (DE 20) and Plaintiffs' Request for Hearing on Defendant's Motion for Summary Judgment (DE 26). The Court has carefully considered the motions and is otherwise fully advised in the premises.

I. Background

The facts, as culled from exhibits, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to the non-moving party, for the purpose of this motion, are as follows:[1]

Plaintiffs James Kissinger and Marie Culbert ("Plaintiffs") executed a $152,000 note in favor of Option One Mortgage Corporation ("Option One") on May 7, 2007. (Note, Ex. 1, DE 21-1.) Payment of the note is secured by a mortgage on Plaintiffs' primary residence and principal dwelling located at 2893 NE 14th Avenue, Pompano Beach, Florida 33064. The

---

[1] The parties filed a Joint Statement of Material Facts. (DE 21.)

mortgage was executed on May 7, 2007 by Plaintiffs. (Mortgage, Ex. 2, DE 21-2.) Defendant is not listed on either the note or mortgage as the party to whom payments are initially payable. Plaintiffs' loan was assigned to the Soundview Home Loan Trust 2007-OPT2, Asset-Backed Certificates, Series 2007-OPT2 ("Trust"). The Pooling and Servicing Agreement ("PSA") for the Trust lists Defendant as trustee and Option One Mortgage Corporation as master servicer. At all material times, Defendant was an assignee of the subject loan. The assignment to Defendant was voluntary. Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHMSI") has been employed by Defendant as the loan servicer for the subject loan at all times material to the allegations in the Complaint. (Compl. ¶¶ 6-7, DE 1.) AHMSI acquired the residential servicing business of Option One in 2008. In connection with this acquisition, AHMSI became the successor master servicer to Option One for the Trust.

On or about February 3, 2011, Plaintiffs sent correspondence to AHMSI that included a request to identify the full name, address and telephone number of the owner or master servicer of the original mortgage note. (Feb. 3, 2011 letter, Ex. 3, DE 21-3.) On or about March 16, 2011, AHMSI responded to the February 3, 2011 request. In the response, AHMSI stated:

> The owner and Note holder of the above-mentioned loan is Wells Fargo Bank, N.A., as Trustee for Soundview Home Loan Trust 2007-OPT2, Asset-Backed Certificates, Series 2007-OPT2. American Home Mortgage Servicing, Inc. (AHMSI) is the mortgage servicer on this mortgage loan and collects payments on behalf of the owner. Below is the address for AHMSI:
>
> > Wells Fargo Bank, N.A., as Trustee for Soundview Home Loan Trust 2007-OPT2, Asset-Backed Certificates, Series 2007-OPT2
> > c/o AHMSI
> > 1525 S. Beltline Road
> > Coppell, Texas 75019
> > Phone: 1.877.304.3100

(Mar. 16, 2011 letter, Ex. B, DE 1.)  Plaintiffs received this correspondence. (Compl. ¶ 15.)

AHMSI was the master servicer of Plaintiffs' loan when it responded to Plaintiffs' February 3, 2011 correspondence. AHMSI's response was in furtherance and within the scope of its employment for Defendant.  The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. applies to the instant action.

According to Defendant, the undisputed facts demonstrate statutory compliance with TILA because AHMSI identified itself as the servicer of the loan in the March 16, 2011 letter and Plaintiffs' own allegations confirm their understanding that AHMSI was the master servicer. Defendant contends that it was unnecessary to use the term "master servicer" because AHMSI explained its relationship with Defendant. In addition, Defendant argues that Defendant, as an assignee, cannot be held vicariously liable for TILA violations.[2]  Defendant also contends that it is not a creditor under TILA.

Plaintiffs respond that the March 16, 2011 letter did not comply with TILA because it did not state expressly that AHMSI was the master servicer.  Furthermore, Plaintiffs argue that the Court has already found vicarious liability for creditors and the same rationale should apply to assignees. Lastly, Plaintiffs claim that Defendant is both a creditor and assignee.

---

[2] The Court notes that it previously held that a creditor may be held vicariously liable under TILA. (Order, DE 16.)

II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477

4

U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

### III. Discussion

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit" through "meaningful disclosure of credit terms," thereby enabling consumers to become informed about the cost of credit. 15 U.S.C. § 1601(a). Besides imposing criminal liability, TILA creates a private cause of action for actual and statutory damages for certain disclosure violations. 15 U.S.C. § § 1611 (criminal liability), 1640(a) (civil liability).

Section 1641 of TILA provides in pertinent part:

(f) Treatment of servicer

(1) In general

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

(2) Servicer not treated as owner on basis of assignment for administrative convenience

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

15 U.S.C. § 1641(f).

A "master servicer" is defined as "the owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer." 24 C.F.R. § 3500.21. A subservicer does not own the right to perform the servicing, but does so on behalf of the master servicer. Id. TILA does not impose liability on servicers, but rather on creditors who fail to comply with various requirements under TILA. 15 U.S.C. § 1640(a).

According to Defendant, the March 16, 2011 letter complied with TILA because AHMSI identified itself as the servicer of the loan who collects payments and responds to inquiries on behalf of Defendant. Plaintiffs, however, point out that the March 16, 2011 letter did not state that AHMSI was the master servicer, in violation of TILA. Defendant relies upon Runkle v. Federal National Mortgage Assoc., No. 12-61247, 2012 WL 5861803 (S.D. Fla. Nov. 16, 2012), vacated in part, 2012 WL 6554755 (S.D. Fla. Dec. 10, 2012).

The facts of Runkle were as follows: The plaintiff defaulted on his mortgage and was facing foreclosure. Id. at * 1. The lender had assigned the home mortgage loan to Fannie Mae, who hired a company called Seterus, Inc., as the master servicer of the loan. Id. When the plaintiff wrote to Seterus to identify the owner or master servicer, Seterus did not provide any information about Fannie Mae but gave Seterus's name, address, and home number and told the plaintiff that it is "servicing" the mortgage loan and that Fannie Mae had "contracted with Seterus to collect payments and respond to inquiries regarding the loan." Id. at * 1-2. The plaintiff brought suit under TILA, claiming that Seterus did not identify itself as the "master servicer." Id. at * 2. The Runkle court held that, even though Seterus's response did not use the term "master servicer," the information provided in the response told the plaintiff it was the master servicer of the loan "without using those exact words." Id. at * 3. Moreover, the Runkle

court noted that the response "could possibly be more helpful than simply using a legal term of art." Id. The Runkle court further observed that the plaintiff "could have deduced that Seterus was the master servicer because there was a direct contract between the assignee of the loan and the servicer." Id. Therefore, Seterus could not have been a subservicer because the contract would have had to have been between a master service and Seterus. Id.[3]

The reasoning of the Runkle court is applicable to the undisputed facts of this case. The Court concludes, as a matter of law, that it is not necessary that the response to a creditor's inquiry explicitly state that a servicer is the master servicer where adequate information is provided to the creditor for the creditor to make that determination. Such was the case here. AHMSI provided information that would allow Plaintiffs to understand that it was the master servicer. The March 16, 2011 letter to Plaintiffs explained that AHMSI is the mortgage servicer on their mortgage loan and collects payments on behalf of the owner. This is the definition of a master servicer set forth in the regulations. See 24 C.F.R. § 3500.21 ( a "master servicer" is defined as "the owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer."). Since Defendant provided information that meets the definition of "master servicer," and as a result Plaintiffs could have drawn the conclusion that AHMSI was the "master servicer" from the information provided, it was not necessary for

---

[3] Subsequent to the issuance of that order, the plaintiff in Runkle filed a motion for reconsideration. Runkle, 2012 WL 6554755, at * 1. The plaintiff's motion for reconsideration provided new evidence that Fannie Mae was listed both as the investor and servicer of the loan and that Seterus was listed as the subservicer. Id. As a result, the Runkle court concluded that the new evidence raised a question of fact regarding Seterus's status as a subservicer. Id. Hence, the Runkle court vacated the portion of its order that dismissed the TILA count for a violation of section 1641(f)(2). Id. at * 2. Although the Runkle order was vacated because of new evidence, its reasoning remains sound.

AHMSI to state expressly that it was the "master servicer."[4]

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion for Summary Judgment (DE 20) is **GRANTED.** The Court will separately enter judgment for Defendant.

2) Plaintiffs' Request for Hearing (DE 26) is **DENIED.**

3) The Clerk will close this case and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of January, 2013.

_____
KENNETH A. MARRA
United States District Judge

---

[4] Because the Court finds that the March 16, 2011 letter did not violate TILA, it is unnecessary to determine whether Defendant, as an assignee, can be liable for a TILA violation.